UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

BOBBY C. JONES,

      Plaintiff,

v.                                Case No:  6:12-cv-771-Orl-28KRS

FEDERAL EXPRESS CORPORATION
and AETNA LIFE INSURANCE
COMPANY,

      Defendants.

_____

ORDER

In 2006, while employed as a courier by Federal Express Corporation (FedEx),

Plaintiff Bobby C. Jones exacerbated a previous back injury.  He received and

exhausted his benefits under FedEx's Short Term Disability (STD) Plan, as well as his

benefits under the "Occupational Disability" definition of the Long Term Disability (LTD)

Plan.  (AR-000002).[1]  Ultimately, Aetna Life Insurance Company, the FedEx claims

administrator, found that Mr. Jones did not meet the definition of "Total Disability" as

required for continued benefits and denied his claim. (AR-000006 - 007). Upon denial of

the claim, Mr. Jones sued FedEx and Aetna under the Employment Retirement Income

Security Act of 1974 (ERISA).  (Compl., Doc. 1).  FedEx filed a counterclaim, seeking

reimbursement for benefits it paid Mr. Jones while he was also receiving Social Security

benefits.  (Answer & Countercl., Doc. 16).

Both sides have filed motions for summary judgment.  Defendants seek summary

judgment on Mr. Jones's claim, arguing that the Court should affirm Aetna's denial of

_____

[1] Citations to the administrative record, which has been filed with the Court
electronically, (see Exs. to Doc. 36), are denoted by "AR" followed by the page number.

LTD benefits. FedEx also seeks summary judgment on its counterclaim brought under ERISA, 29 U.S.C. § 1132(a)(3), requesting equitable relief in the form of reimbursement by Mr. Jones for the overpayments he received. Mr. Jones requests entry of summary judgment on FedEx's counterclaim, arguing that equitable relief is not available because the funds in question have been dissipated. Mr. Jones's motion for summary judgment (Doc. 39) as to FedEx's counterclaim must be granted, and Defendants' motion for summary judgment (Doc. 41) must be granted in part and denied in part.

I.    Background

Mr. Jones has a long history of back problems.[2]  While he was a courier at FedEx,[3] Mr. Jones participated in FedEx's STD and LTD Plans. After aggravating his previously injured back in 2006, (AR-000024), he applied for and was granted STD benefits for the period of November 6, 2006, to May 6, 2007. (AR-000002). Later he applied for LTD benefits.

FedEx's LTD Plan covers two types of disability—Occupational Disability and Total Disability. (See AR-000419). Occupational Disability means "the inability of a Covered Employee, because of a medically-determinable physical or functional impairment . . . to perform the duties of his regular occupation." (AR-000423 – 424). Total Disability is "the complete inability of a Covered Employee, because of a medically-determinable physical or functional impairment . . . to engage in any compensable employment for twenty-five hours per week." (AR-000427). Benefits for

---

[2] In his notes, Dr. Frank Collier stated his impression that Mr. Jones suffers from degenerative disc disease, lumbar annular disc tear, discogenic back pain, and lumbar and gluteal fibromyositis. (AR-000106). Other doctors have similarly noted disc space narrowing, (see, e.g., AR-00097), and disc protrusion, (see, e.g., AR-000050).
[3] The administrative record does not describe in detail the job functions of a courier, but it is noted in the record that couriers are likely expected to do some degree of manual labor. (See AR-000145).

Occupational Disability last for a maximum of twenty-four months; after Occupational Disability benefits are terminated, the applicant must qualify for Total Disability to continue receiving benefits. (See AR-000435; see also Summary Plan Description, AR-000395).

To be considered disabled under the LTD Plan under either disability definition, an applicant's disability must be "substantiated by significant objective findings which are defined as signs which are noted on a test or medical exam and which are considered significant anatomical, physiological or psychological abnormalities which can be observed apart from the individual's symptoms." (AR-000419 - 420). According to the Plan's Summary Plan Description, "[s]ignificant objective findings are those that can be observed by [the claimant's] health care professional through objective means, not just from [the claimant's] description of the symptoms." (AR-000395). Notably, "[p]ain, without significant objective findings, is not proof of disability." (AR-000395).

Mr. Jones received LTD benefits under the "Occupational Disability" definition in the Plan from May 7, 2007, to May 6, 2009, because "he was unable to perform the duties of his job . . . during that timeframe." (AR-000002). However, on March 27, 2009, Aetna sent a letter to Mr. Jones informing him that "[i]t has been determined that no benefits are payable to [Mr. Jones] for [his Total Disability] claim beyond" May 6, 2009. (AR-000006). The letter stated that "[t]here was no documentation to indicate [his] inability to walk, stand, sit or use [his] upper extremities. As a result of the above review, it has been determined that there are no significant objective findings to support a Total Disability that would prevent [Mr. Jones] from engaging in any compensable employment for a minimum of twenty-five hours a week in a sedentary position." (AR-

000007).     Mr. Jones administratively appealed Aetna's denial, and on June 25, 2009, Aetna sent a letter to Mr. Jones stating that the Aetna Review Committee had upheld the denial because of a lack of significant objective findings. (AR-000001). That letter stated that in making its decision the committee had reviewed the various treatments provided to Mr. Jones.  (AR-000002).

The LTD Plan provides that benefits under the Plan must be reduced by the amount the beneficiary receives from other sources, including Social Security payments.  (AR-000444 - 447). The Plan requires beneficiaries to reimburse the Plan for any overpayments.  (AR-000467 - 468). It is undisputed that Mr. Jones received retroactive Social Security disability benefits for March 2009 to April 2010.  (Jones Dep., Doc. 41-1 at 9).

## II.     LTD Benefits Claim

### A.     ERISA Review Standards

As other courts in this district have noted, "'[i]n an ERISA benefit denial case . . . in a very real sense, the district court sits more as an appellate tribunal than as a trial court.  It does not take evidence, but, rather, evaluates the reasonableness of an administrative determination in light of the record compiled before the plan fiduciary.'" Crume v. Metro. Life Ins. Co., 417 F. Supp. 2d 1258, 1272 (M.D. Fla. 2006) (quoting Leahy v. Raytheon Co., 315 F.3d 11, 17-18 (1st Cir. 2002)); see also Curran v. Kemper Nat'l Servs., Inc., No. 04-14097, 2005 WL 894840, at *7 (11th Cir. Mar. 16, 2005). "Accordingly, '[w]here the decision to grant or deny benefits is reviewed for abuse of discretion, a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply.'" Crume, 417 F. Supp.

2d at 1272 (alteration in original) (quoting <u>Bendixen v. Standard Ins. Co.</u>, 185 F.3d 939, 942 (9th Cir. 1999)).

"ERISA itself provides no standard for courts reviewing the benefits decisions of plan administrators or fiduciaries." <u>Blankenship v. Metro. Life Ins. Co.</u>, 644 F.3d 1350, 1354 (11th Cir. 2011). However, the Eleventh Circuit has "established a multi-step framework to guide courts in reviewing an ERISA plan administrator's benefits decisions." <u>Id.</u> The six steps in this framework are:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.

> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.

> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).

> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.

> (5) If there is no conflict, then end the inquiry and affirm the decision.

> (6) If there is a conflict, the conflict should merely be a factor for the court to take into account when determining whether an administrator's decision was arbitrary and capricious.

<u>Id.</u> at 1355.

Following this framework, the Court must first assess whether Aetna's decision to deny Mr. Jones's claim for LTD benefits was "wrong" under the *de novo* standard—that is, whether the Court disagrees with that decision. "Review of the plan administrator's denial of benefits is limited to consideration of the material available to the administrator at the time it made its decision." Id. at 1354. The court must "'review both the administrator's construction of the plan and concomitant factual findings.'" Glazer v. Reliance Standard Life Ins. Co., 524 F.3d 1241, 1246 (11th Cir. 2008) (quoting Paramore v. Delta Air Lines, Inc., 129 F.3d 1446, 1451 (11th Cir. 1997)).

## B.   Discussion

Review of the claims administrator's decision to deny Mr. Jones's claim does not proceed beyond the first Blakenship step—the decision was not wrong. Under the LTD Plan, to be entitled to benefits due to Total Disability, Mr. Jones must prove that he cannot "engage in any compensable employment for twenty-five hours per week." An employee must submit significant objective findings of disability to receive benefits, and in considering the extensive record in this case, the Court must consider objective findings in conducting its *de novo* review. The Court cannot consider pain as an objective finding.

The objective evidence considered by doctors shows that Mr. Jones does not fit the definition of "Total Disability" in the LTD Plan. Any abnormalities in his tests have been typically described as "mild" or "minimal" by doctors. (See, e.g., AR-000081 (Dr. Krishnan Gopal describing Mr. Jones's disc bulge as mild); AR-000097 (Dr. D. Mark Murphy stating that Mr. Jones's disc space narrowing was "minimal")). Doctors have stated that Mr. Jones's tests were unremarkable and showed only abnormalities that they do not typically associate with back pain. (See AR-000084, 089, 097).

As Mr. Jones points out, some doctors have recommended work restrictions for him. In November 2006, before Mr. Jones's back surgery, Dr. Charles Farr stated that no work was advised. (AR-000041). In February 2009, Dr. Robert Martin stated in response to an LTD questionnaire from Aetna that Mr. Jones was "unable to work at any compensable employment for a minimum of twenty-five hours per week." (AR-000130). Dr. Malik also "recommended that [Mr. Jones's] work should be restricted to less than 25 hours per week"; this recommendation, however, also contained language stating that Mr. Jones was restricted to no more than "light to medium duties" and did not address the possibility of sedentary work. (AR-000033).

Other doctors noted that while Mr. Jones could not do the work required in his job as a courier at FedEx, he would be able to work in a different job. Mr. Jones was given a physical demand rating of sedentary by Dr. Arnold Lang, (AR-000135), who stated in March 2009 that "the clinical documentation fails to reveal a functional impairment that would preclude the claimant from engaging in any compensable employment for a minimum of 25 hours/week." (AR-000137). A later physician review by Dr. Alan Saperstein, which summarized the findings from several physicians, stated that an April evaluation indicated that Mr. Jones was "capable of performing light-to-medium duty work." (AR-000144). After examining the doctors' notes and recommendations, Dr. Saperstein agreed with Dr. Lang's conclusion that no functional impairment meeting the definition of Total Disability was evident in the documentation. (See AR-000145).

Mr. Jones argues that Defendants' reliance on Dr. Saperstein was misplaced because he failed to take into account the work restrictions recommended by Drs. Martin and Malik. (Doc. 43 at 9). The Court rejects this argument. The administrative

7

record indicates that Dr. Saperstein did consider the opinions of both doctors. (AR-000144 – 145). Dr. Saperstein also considered many other evaluations of Mr. Jones, including one that stated that Mr. Jones was capable of performing light-to-medium duty work and could perform a number of tasks, including alternate sitting and standing and carrying twenty-five pounds over fifty feet. (AR-000144). Dr. Saperstein considered the opinions of various doctors, and Defendants were entitled to rely on his conclusions.

Mr. Jones also asserts that Defendants should not have relied on Dr. Lang's findings because Dr. Lang did not consider the findings by Dr. Malik and other doctors or Mr. Jones's hardware in his back after his surgery. (Doc. 43 at 8). Only one evaluation by Dr. Malik that Mr. Jones cites took place before Dr. Lang's evaluation, and it included findings similar to those of other doctors. (See AR-000017). Dr. Lang appears to have considered an extensive set of documents in determining his work recommendations. (AR-000135 - 136). Furthermore, Dr. Lang clearly noted that Mr. Jones had hardware in his back after surgery; he stated that an MRI showed "good placement of the instrumentation."[4] (AR-000136).

### C.    Conclusion

Mr. Jones has failed to prove that he qualifies for continued benefits. While some doctors recommended work restrictions, their recommendations were sometimes connected with a light-to-medium duty workload and generally did not address whether Mr. Jones is capable of performing sedentary work. Other doctors concluded that Mr. Jones does not have a functional impairment that would preclude him from working in any other occupation for at least twenty-five hours per week. Importantly, Mr. Jones's

---

[4] Mr. Jones fails to demonstrate why hardware in his back would necessarily prevent him from working in any compensable employment for a minimum of twenty-five hours per week.

pain is unsubstantiated by significant objective findings. For these reasons, Mr. Jones failed to prove that he meets the Plan's definition of Total Disability.

Because the Court agrees with the claims administrator's denial of benefits after conducting *de novo* review, the benefits-denial decision must be affirmed. Although it is likely that the administrative decision would be affirmed under other steps of the Blankenship analysis, it is not necessary to proceed further. Defendants' Motion for Summary Judgment on Mr. Jones's claim must be granted.

## III.   Overpayment Counterclaim

The LTD Plan requires that benefits be reduced by amounts that the beneficiary receives from other sources, including Social Security Disability (SSDI) benefits. (AR-000444 - 447). The Summary Plan Description states that if the beneficiary receives a retroactive Social Security award, the beneficiary must notify Aetna immediately and "reimburse FedEx for any overpaid amounts." (AR-000394). The Plan further directs:

> If benefits are paid in excess of the amount to which a Covered Employee is entitled under this Plan, it shall be the obligation and responsibility of such Employee to repay to the Plan the amount of the overpayment. . . .
>
> The Administrator shall have the right to bring a legal action against any Covered Employee who has been notified of an overpayment and who has failed to make appropriate repayment.

(AR-000467 - 468).

The parties agree that Mr. Jones received $24,682.00 in retroactive SSDI benefits for the months of March 2009[5] through April 2010,[6] (Jones Dep., Doc. 41-1 at

---

[5] In its counterclaim, FedEx alleges that Mr. Jones received SSDI benefits starting on September 3, 2008. (Doc. 16 at 7). In its motion for summary judgment, however, FedEx alleges, consistent with Mr. Jones's deposition, that Mr. Jones received benefits retroactive to March 2009. (Doc. 41 at 24). The Court construes FedEx's claim as one for reimbursement for benefits paid between March 2009 and May 2009.

9), and FedEx seeks reimbursement for overpayments made between March 2009 and May 2009, when Mr. Jones's LTD benefits ceased.  They also agree that he neither reported the receipt of these SSDI benefits to Defendants nor reimbursed Defendants for payments made during the time benefits overlapped.  (Id. at 7-8).

FedEx has filed an ERISA counterclaim to recover the overpayments, and the parties have submitted cross-motions for summary judgment on that counterclaim. FedEx argues that under § 502(a)(3) of ERISA, which allows equitable suits by fiduciaries, Mr. Jones is obligated to reimburse the Plan for the overpaid LTD benefits received during the period of time in which Mr. Jones's SSDI benefits overlapped with his LTD benefits.  (Doc. 41 at 23).   Mr. Jones responds that FedEx's counterclaim "should be dismissed as a matter of law or in the alternative contends there is no genuine issue of material fact"[7] because breach of contract claims are preempted by ERISA, which only allows equitable remedies such as an equitable lien.  (See Pl.'s Resp. to Defs.' Mot. Summ. J., Doc. 43 at 21). He further argues that for an equitable lien to be imposed, the funds sought to be recovered must remain in the beneficiary's possession.  (Id. at 22 (citing Epolito v. Prudential Ins. Co., 737 F. Supp. 2d 1364 (M.D. Fla. 2010))).  He contends that because he spent the funds, equitable relief is not

---

[6] In Mr. Jones's deposition, both parties state that the lump sum award was for benefits through June 2010, (Doc. 41-1 at 6), but the letter sent to Mr. Jones from the Social Security Administration and submitted by Defendants indicates that the retroactive benefits were for the time period between March 2009 and April 2010, (id. at 9).

[7] Although Mr. Jones's counsel uses some language indicating a request to dismiss the counterclaim, his motion seeks summary judgment.   The Court reads Mr. Jones's arguments as requesting summary judgment.

available. (See id. at 22-23).[8]   FedEx argues in response that it is requesting an equitable lien by agreement, which "is not subject to tracing requirements."   (Def.'s Resp. to Pl.'s Mot. Summ. J., Doc. 42 at 1).

## A.   Summary Judgment Standard

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   The moving party bears the burden of demonstrating that no genuine issues of material fact remain. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). That burden "may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." Id. at 325.

In ruling on a motion for summary judgment, the Court construes the facts and all reasonable inferences therefrom in the light most favorable to the nonmoving party, and it may not weigh evidence or determine credibility.   Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150 (2000).   However, summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322.

When faced with a "properly supported motion for summary judgment, [the nonmoving party] must come forward with specific factual evidence, presenting more than mere allegations."   Gargiulo v. G.M. Sales, Inc., 131 F.3d 995, 999 (11th Cir. 1997).   "'In a response to a motion for summary judgment, a party cannot rely on

---

[8] Mr. Jones argues in the alternative that he never received formal notice that he was overpaid benefits.  (Doc. 43 at 8). Because the Court decides the counterclaim in Mr. Jones's favor on his first argument, it does not address his notice argument.

ignorance of facts, on speculation, or on suspicion, and may not escape summary

judgment in the mere hope that something will turn up at trial.' Essentially, the inquiry is

'whether the evidence presents a sufficient disagreement to require submission to the

[factfinder] or whether it is so one-sided that one party must prevail as a matter of law.'"

Sawyer v. Southwest Airlines Co., 243 F. Supp. 2d 1257, 1262 (D. Kan. 2003) (quoting

Conaway v. Smith, 853 F.2d 789, 794 (10th Cir. 1988), and Anderson v. Liberty Lobby,

Inc., 477 U.S. 242, 251-52 (1986)); see also LaRoche v. Denny's, Inc., 62 F. Supp. 2d

1366, 1371 (S.D. Fla. 1999) ("The law is clear . . . that suspicion, perception, opinion,

and belief cannot be used to defeat a motion for summary judgment.").

### B.    Equitable Relief under ERISA

Under the Plan, Mr. Jones was required to reimburse FedEx for any

overpayments it made to Mr. Jones as a result of Social Security benefits he received.

Contrary to the terms of the Plan, Mr. Jones collected and dissipated overpayments

from FedEx. FedEx now seeks reimbursement for those payments under § 502(a)(3) of

ERISA, which allows a plan fiduciary "to obtain other appropriate equitable relief (i) to

redress such violations or (ii) to enforce . . . the terms of the plan." 29 U.S.C. §

1132(a)(3); see also Great-West Life & Annuity Ins. Co. v. Knudson, 534 U.S. 204, 209

(2002). The use of the language "equitable relief" in the statute means that some

causes of action by fiduciaries are excluded under ERISA. Knudson, 534 U.S. at 209.

The parties disagree as to whether FedEx's claim for reimbursement is cognizable

under § 502(a)(3).

In its counterclaim, FedEx seeks "reimbursement," but it is actually asserting a

legal form of restitution. "Restitution" is the "[r]eturn or restoration of some specific thing

to its rightful owner or status." Black's Law Dictionary 1428 (9th ed. 2009). "[F]or

12

restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession." Knudson, 534 U.S. at 214.   "[W]here 'the property [sought to be recovered] or its proceeds have been dissipated so that no product remains, [the plaintiff's] claim is only that of a general creditor,' and the plaintiff 'cannot enforce a constructive trust of or an equitable lien upon other property of the [defendant].'" Id. at 213-14 (alterations in original) (quoting Restatement of Restitution § 215 cmt. a (1937)).

Recently, the Supreme Court has twice issued opinions describing when equitable relief is appropriate under § 502(a)(3). In Knudson, the Supreme Court noted that the funds were paid by a third party tortfeasor into a Special Needs Trust and to the beneficiary's attorney and were never in the possession of the beneficiary. Id. at 214. Because the beneficiary did not hold funds that belonged to the company, the company did not have a cognizable claim for equitable relief. See id.

In Sereboff v. Mid Atlantic Medical Services, Inc., the Supreme Court again addressed this topic. 547 U.S. 356 (2006). Unlike in Knudson, the beneficiaries in Sereboff had possession of the funds sought by the fiduciary, and these funds were set aside in a separate account throughout the duration of the case. Id. at 360. At issue in Sereboff was whether an equitable lien could be asserted when the insurance company never had possession of the funds in question. See id. at 364.   The Supreme Court answered that question in the affirmative, finding that the company sought an equitable lien by agreement and that the insurer did not have to trace the property back to its own possession in order to assert such a lien. See id. at 364-65. In addition, "'a contract to convey a specific object even before it is acquired will make the contractor a trustee as

soon as he gets title to the thing.'" Id. at 363-64 (quoting Barnes v. Alexander, 232 U.S. 117, 121 (1914)). The Court thus held that the company "properly sought 'equitable relief' under § 502(a)(3)." Id. at 369. Sereboff did not address dissipation of assets because the assets were not dissipated but instead had been preserved in a separate fund.[9]

Some circuit courts interpreting Sereboff have held that a beneficiary's dissipation of assets is immaterial when the fiduciary asserts an equitable lien by agreement. See Funk v. CIGNA Grp. Ins., 648 F.3d 182, 194 (3d Cir. 2011) ("If . . . there was an equitable lien by agreement that attached to the Social Security award as soon as [the beneficiary] received it, dissipation of the funds was immaterial."); see also Thurber v. Aetna Life Ins. Co., 712 F.3d 654, 664 (2d Cir. 2013); Cusson v. Liberty Life Assurance Co., 592 F.3d 215, 231 (1st Cir. 2010); Gutta v. Standard Select Trust Ins. Plans, 530 F.3d 614, 621 (7th Cir. 2008); Gilchrest v. Unum Life Ins. Co., 255 F. App'x 38, 44-45 (6th Cir. 2007).

The Eleventh Circuit has not addressed the issue of dissipation, but it has interpreted Sereboff by saying that "Sereboff reiterated the rule that a suit to recover a specific, identifiable asset in the possession of a defendant would constitute a valid equitable restitution claim" that would be permissible under ERISA. Green v. Holland, 480 F.3d 1216, 1225-26 (11th Cir. 2007); see also Admin. Comm. for the Wal-Mart Stores, Inc. Assocs.' Health & Welfare Plan v. Horton, 513 F.3d 1223, 1226-27 (11th

---

[9] The Supreme Court again addressed equitable relief under ERISA recently, holding that equitable defenses from the doctrine of unjust enrichment cannot override the terms of the plan. US Airways v. McCutchen, 133 S. Ct. 1537, 1542-43 (2013). McCutchen's holding is focused on the assertion of equitable defenses and does not address dissipation of assets.

Cir. 2008) ("Under Knudson [and] Sereboff, . . . the most important consideration is not

the identity of the defendant, but rather that the settlement proceeds are still intact, and

thus constitute an identifiable *res* that can be restored to its rightful recipient."). The

Eleventh Circuit has found that suit for restitution constituted equitable relief when the

plan identified the fund out of which reimbursement was due and the portion due to the

plan. Popowski v. Parrott, 461 F.3d 1367, 1373 (11th Cir. 2006).  Notably, however, the

court in Popowski did not reach the issue of dissipation of assets. See id. at 1370-72,

1374 n.8.[10]

Taking into account this Eleventh Circuit precedent, judges in this district have

interpreted Sereboff differently from some circuit courts in the context of dissipated

assets.  See Epolito v. Prudential Ins. Co., 737 F. Supp. 2d 1364 (M.D. Fla. 2010);

Herman v. Metro. Life Ins. Co., 689 F. Supp. 2d 1316 (M.D. Fla. 2010).  In Epolito, the

court explained:

> Because [in Sereboff] the funds the insurer sought to recover were
> preserved due to a pre-trial stipulation, the insured's argument was not
> that the fund had been dissipated since its identification and therefore
> could not be traced.  Rather, the insured's tracing argument was that
> because the insurer had not originally possessed the asset it sought to
> recover (the settlement fund), it could not trace the asset from its own
> possession to that of the insured as required to impose an equitable lien.

Epolito, 737 F. Supp. 2d at 1380-81. The court went on to apply related Eleventh Circuit

precedent to conclude that "in order to succeed in its claim for equitable relief, [the

company] must identify a specific, intact, fund, *in [the beneficiary]'s possession*,

---

[10] This Court recognizes that the Popowski court did address Sereboff's impact on
tracing requirements. Popowski, 461 F.3d at 1374 n.8.  However, the court in Popowski
specifically declined to "reach any issue of tracing." Id.  Additionally, the Eleventh
Circuit has subsequently clarified the importance of an intact identifiable trust property in
asserting equitable restitution. See Horton, 513 F.3d at 1226-27.

belonging in good conscience to [the company]." Id. at 1382. Because the company did not submit evidence that the overpaid benefits had not been dissipated, it was not able to establish an equitable lien and held only claims of a general creditor. Id. at 1382-83.

The court in Herman similarly interpreted Sereboff and Eleventh Circuit precedent and held that "in order to succeed on a Section [502](a)(3) claim, [the insurance company] must identify intact funds in possession of . . . the counterclaim defendant." Herman, 689 F. Supp. 2d at 1330.  Because the company did not do so, its claim for summary judgment was denied and summary judgment was entered in favor of the beneficiary. Id. at 1331.  The court in Herman noted that "Sereboff fails to address the imposition of a constructive trust or equitable lien over a dissipated fund." Id. at 1318.  When such a fund is dissipated, "'the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant.'" Id. (quoting Knudson, 534 U.S. at 213-14).

Epolito and Herman are persuasive.  When property is dissipated and "no product remains," the plaintiff cannot enforce an equitable lien upon other property of the defendant, and the plaintiff's "claim is only that of a general creditor." Knudson, 534 U.S. at 213-14.  In Sereboff, there was an identifiable fund to which the fiduciary was claiming a right.  While Sereboff further clarifies the scope of equitable suits in ERISA actions, it does not address the requirement that the fiduciary identify specific property in current possession of the beneficiary, which according to Knudson is a basic requirement for asserting equitable restitution.  Sereboff merely provides that when the parties agree that an equitable lien be imposed on property, it is not necessary that the property have been delivered by the insurer.  Furthermore, Eleventh Circuit precedent

after Sereboff has indicated that equitable relief under ERISA continues to require that the fiduciary identify specific assets still in the possession of the beneficiary.   Without the requirement that specific property be extant and identifiable, there would be no distinction between equitable restitution and a money judgment.   And, Congress has mandated that fiduciaries can only seek equitable relief.   They cannot sue for money judgments.

FedEx has not presented any evidence that it has or can identify a specific fund to which it is entitled, and it has not shown that the funds are still in the possession of Mr. Jones.  Because FedEx has not shown any specific fund in the possession of Mr. Jones that belongs in good conscience to FedEx and that is still intact, it cannot assert an equitable restitution claim and its counterclaim fails. There is no genuine dispute of material fact on this issue. FedEx's motion for summary judgment on its counterclaim must be denied, and Mr. Jones's motion for summary judgment must be granted. See Herman, 689 F. Supp. 2d at 1331. As in Knudson, the Court makes no determination as to whether FedEx may otherwise be able to obtain relief under the Plan. See Knudson, 534 U.S. at 220.

IV.   Conclusion

Defendants' denial of Mr. Jones's LTD benefits was not "wrong" and must be affirmed.   FedEx is unable to assert a claim for equitable relief, and its ERISA counterclaim therefore fails.

Accordingly, it is **ORDERED AND ADJUDGED** as follows:

1.   Defendants' Motion for Summary Judgment (Doc. 41) is **GRANTED** as to the benefits disability determination but **DENIED** as to the overpayment counterclaim.

2.     Mr. Jones's Motion for Summary Judgment (Doc. 39) directed to FedEx's counterclaim is **GRANTED**.

3.     The Clerk is directed to enter a judgment providing that Plaintiff takes nothing on his ERISA claim and that Defendant FedEx takes nothing on its ERISA counterclaim.  Thereafter, the Clerk shall close the file.

**DONE** and **ORDERED** in Orlando, Florida on November 14, 2013.

Copies furnished to:

Counsel of Record

JOHN ANTOON II
United States District Judge